1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

| | |
|---|---|
| AILA CURTIS, et al., | CASE NO. 3:23-cv-05741-RJB |
| Plaintiffs, | ORDER ON PEACEHEALTH DEFENDANTS' MOTION TO DISMISS |
| v. | |
| PEACEHEALTH, LIZ DUNNE, DOUG KOEKKOEK, | |
| Defendants. | |

This matter comes before the Court on PeaceHealth, Liz Dunne, and Doug Koekkoek's (collectively "PeaceHealth" or "PeaceHealth Defendants") Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. 30) and Plaintiffs' motion for judicial notice (Dkt. 36). Oral argument has been requested but is unnecessary to decide the motions. The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

This case arises from Defendants' COVID-19 vaccine mandates for healthcare workers. Dkt. 8. The healthcare worker Plaintiffs contend that the Defendants violated Plaintiffs' constitutional and international treaty rights, federal statutory rights, and that Defendants

1  breached a contract and committed various state torts in connection with their "unlawful,

2  malicious, unequal and contractually violative COVID-19 investigational drug mandate[s]." *Id.*

3  at 2.

4       All claims against Washington State Governor Jay Robert Inslee were dismissed on

5  December 21, 2023.  Dkt. 32.  The PeaceHealth Defendants now move to dismiss the claims

6  against them pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6).  Dkt. 30.  The Plaintiffs also move

7  the Court to take judicial notice of a letter and a declaration filed in an out-of-district case.  Dkt.

8  36.  For the reasons provided below, the motion for judicial notice (Dkt. 36) should be granted

9  and the motion to dismiss (Dkt. 30) should be granted, as to the federal claims, and renoted as to

10  the state law claims.

11  **I.**     **MOTION FOR JUDICIAL NOTICE, PROCEDURAL HISTORY AND FACTS**

12  **A. MOTION FOR JUDICIAL NOTICE**

13       Pursuant to Federal Rule of Evidence 201(b): "[t]he court may judicially notice a fact that

14  is not subject to reasonable dispute because it: (1) is generally known within the trial court's

15  territorial jurisdiction; or (2) can be accurately and readily determined from sources whose

16  accuracy cannot be reasonably questioned."

17       The Plaintiffs move the Court to take judicial notice of facts in a letter, dated August 23,

18  2021, from the United States Food and Drug Administration ("FDA") to Pfizer Inc. (Dkt. 36-1)

19  and facts in the Declaration of Peter Marks, M.D. Ph.D. dated January 14, 2022 (36-2). Dkt. 36.

20       **Letter**. In the December 21, 2023 order that dismissed all claims against Gov. Inslee, the

21  Court took judicial notice of facts in the August 23, 2021 letter.  Dkt. 32.  Accordingly,

22  Plaintiffs' motion regarding that letter (Dkt. 36) should be granted.

23

24

**Declaration of Dr. Marks**. The Plaintiffs' motion for the Court to take judicial notice of facts in Dr. Mark's Declaration (Dkt. 36) should be granted.

Dr. Marks, who at that time was the FDA's Director of the Center for Biologics Evaluation and Research ("CBER"), prepared his declaration for *Coker v. Austin,* U.S. Dist. Court for the Northern Dist. of Florida case number 21-1211 AW-HTC.  Dkt. 36-2.  His declaration states that it was based, in part, on information available to him in his official capacity, and that in his official capacity as CBER Director, he was "fully familiar with [*Coker*] and the facts stated [therein]."  Dkt. 36-2 at 1-2.  While no such showing that he is familiar with the facts of this case is made, facts relevant to this case in his declaration "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."  In any event, the relevant facts in Dr. Marks' Declaration are unhelpful to the Plaintiffs as will be discussed more thoroughly below in Section I.C.

**B.  PROCEDURAL HISTORY**

**Parties**.  The Plaintiffs are current and former PeaceHealth employees who filed a lengthy complaint on August 18, 2023.  Dkt. 1.  Although there are over 80 Plaintiffs, this is not a class action.  The defendants were/are Gov. Inslee, PeaceHealth, a not-for-profit healthcare system headquartered in Clark County, Washington, and officers of PeaceHealth, Liz Dunne and Doug Koekkoek.  *Id.*

**Amended Complaint.**  The Amended Complaint asserts federal claims against the Defendants for: (1) violation of the Fourteenth Amendment's equal protection rights, (2) violation of the Fourteenth Amendment's due process rights, (3) violation of the "Spending Clause Doctrine," (4) "Subjected to Investigational Drug Use," pursuant to 42 U.S.C. § 1983, (5) "Unconstitutional Conditions Doctrine," (6) "Implied Right of Action 21 U.S.C. § 360bbb-3;" a

1    provision of the Federal Food, Drug, and Cosmetic Act ("FDCA"), and state law claims for (7)

2    breach of contract, (third party beneficiary), (8) "employment torts," (9) outrage, and (10)

3    invasion of privacy and defamation of character.  Dkt. 8 at 57-70.

4        **Order Granting Gov. Inslee's Motion to Dismiss**.  On December 21, 2023, Gov.

5    Inslee's motion to dismiss was granted and all claims asserted against him were dismissed.  Dkt.

6    32.  That order further granted Gov. Inslee's motion for judicial notice that:  on August 23, 2021,

7    the Pfizer-BioNTech vaccine received full FDA approval for individuals 16 and older.  *Id.*  This

8    order adopts the reasoning (*Id.*) regarding that finding.  As was the case in the December 21,

9    2023 order, this order does not credit allegations in the Amended Complaint that the only

10   available vaccines at the relevant time were "investigational" or "experimental."  *Id.*; *Gonzalez v.*

11   *Planned Parenthood of Los Angeles,* 759 F.3d 1112, 1115 (9th Cir. 2014)(holding that although

12   for purposes of a motion to amend or for a motion to dismiss the court ordinarily credits the

13   allegations in the complaint as true, it need not "accept as true allegations that contradict matters

14   properly subject to judicial notice," or in a complaint's attachment, or incorporated by reference

15   into the complaint).

16        The December 21, 2023 order dismissed the Plaintiffs federal constitutional claims

17   asserted against Gov. Inslee because they failed to allege sufficient properly credited facts in the

18   Amended Complaint to assert a claim for violation of their equal protection, substantive due

19   process or procedural due process rights.  Dkt. 32 at 8-10.  It further found that there was no

20   private cause of action under the spending clause doctrine.  *Id*. As to the Plaintiffs' "subjected to

21   investigational drug use," claim, which referred to 21 U.S.C. § 360bbb-3, 45 C.F.R. Part 46, the

22   Belmont Report, Article VI of the International Covenant on Civil and Political Rights

23   ("ICCPR") Treaty, 10 U.S.C. § 980, Federal Wide Assurance, and the CDC COVID-19

24

Vaccination Program Provider Agreement, the December 21, 2023 order held that these laws/report/treaty were inapplicable and there was no private cause of action under any of these against Gov. Inslee. *Id.* at 11-13.  The December 21, 2023 order held that the Plaintiffs failed to allege sufficient facts for which relief could be granted on their "unconstitutional conditions doctrine claim." *Id.*  It further held that Gov. Inslee was entitled to qualified immunity. *Id.* at 13-15.  This order adopts the reasoning from the December 21, 2023 order on all federal claims. The state law claims against Gov. Inslee were also dismissed. *Id.*

**C.  BACKGROUND FACTS RELEVANT TO PEACEHEALTH'S MOTION**

The background facts are taken from the Amended Complaint, its attachments, and facts subject to judicial notice. *Gonzalez* at 1115.  Where judicial notice has been, or is now taken, it will be designated.  Additionally, some general background information will be taken from court decisions.

1.  <u>COVID-19, Emergency Use Authorizations for Vaccines, and Vaccine Program</u>

COVID–19 is a "highly contagious, dangerous, and . . . deadly disease." *Biden v. Missouri*, 595 U.S. 87, 93 (2022).  The COVID-19 pandemic posed significant challenges for federal and state governments.  Dkt. 8.  Beginning in February of 2020, Gov. Inslee declared a state of emergency and issued several public health and safety proclamations. *Flower World, Inc. v. Sacks*, 43 F.4th 1224, 1227 (9th Cir. 2022).

In December of 2020, the FDA granted emergency use authorization ("EAU") for the Pfizer-BioNTech ("Pfizer-BioNTech") two-dose mRNA vaccine for individuals 16 and older and for the Moderna two-dose mRNA vaccine for individuals 18 years and older.  Dkt. 8.  On December 21, 2020, Pfizer-BioNTech received conditional marketing authorization in the European Union

1    for its COVID-19 vaccine, marketed as COMIRNATY®.  *Id.*  On February 27, 2021, the FDA

2    granted EAU for the Johnson & Johnson vaccine for individuals 18 and older.  *Id.*

3         The Amended Complaint alleges that PeaceHealth voluntarily agreed to participate in the

4    Center for Disease Control and Prevention's ("CDC") COVID-19 Vaccination Program.  Dkt. 8

5    at 20.  Attached to the Amended Complaint is a blank "CDC COVID-19 Vaccination Program

6    Provider Agreement" (sometimes referred to herein as "Provider Agreement") (Dkt. 8-1) that the

7    Plaintiffs allege PeaceHealth signed (Dkt. 8 at 20).  *Id.*  This Provider Agreement states that it

8    was an agreement between the CDC and the organization, like PeaceHealth, who agreed to

9    administer COVID-19 vaccines.  Dkt. 8-1 at 2.  The agreement requires certain conduct like: a

10   vaccine provider would administer the vaccines in accordance with all CDC requirements and

11   recommendations, make a record, report vaccine administration data, not sell the vaccines,

12   provide fact sheets to those they vaccinate, handle the vaccines "under proper conditions,

13   including maintaining cold chain conditions," report adverse reactions and provide vaccine

14   record cards.  *Id.*

15        The Amended Complaint does not assert that the PeaceHealth Defendants administered a

16   COVID-19 vaccine (whether experimental or not) on any of the Plaintiffs.  Dkt. 8.  It does not

17   allege that PeaceHealth required its employees to get a COVID-19 vaccine from PeaceHealth.

18   *Id.*

19        Even after vaccines became available, the pandemic continued, with the virus mutating

20   into various strains.  *Does 1-6 v. Mills*, 16 F.4th 20, 26 (1st Cir. 2021)(*cert. denied sub nom*.

21   *Does 1-3 v. Mills,* 142 S. Ct. 1112 (2022)).  In the United States, the summer of 2021 saw the

22   emergence of a highly contagious COVID variant referred to as the "Delta" variant.  *Id.*  COVID

23   cases, hospitalizations and deaths rose sharply. CDC, *COVID Data Tracker,*

24

https://covid.cdc.gov/covid-data-tracker/#trends_weeklyhospitaladmissions_select_00 (last

visited December 13, 2023); https://covid.cdc.gov/covid-data-

tracker/#trends_weeklydeaths_select_00 (last visited December 13, 2023).

   2. Gov. Inslee's Proclamation, Approval of the Pfizer-BioNTech Vaccine,
     PeaceHealth's Policy, and Federal Government's Rule

  On August 20, 2021, Gov. Inslee issued Proclamation 21-14.1, "Covid-19 Vaccination

Requirement," ("Proclamation") which required state workers, workers in an education setting,

and healthcare providers to be fully vaccinated by October 18, 2021, unless they qualified for

medical or religious exemptions.  Dkt. 8-7.

  On August 23, 2021, the Pfizer-BioNTech vaccine received full FDA approval for

individuals 16 and older.  Dkt. 32.  (*citing FDA Approval Letter* (August 23, 2021),

http://www.fda.gov/media/151710/download (last visited December 13, 2023); *FDA News

Release* (August 23, 2021), https://www.fda.gov/news-events/press-announcements/fda-

approves-first-covid-19-vaccine (last visited December 13, 2023); *Pfizer-BioNTech COVID-19

Vaccine Overview and Safety (also known as COMIRNATY®), Ctrs For Disease Control &

Prevention* (Oct. 28, 2021), https://stacks.cdc.gov/view/cdc/111109  (*emphasis in original*) (last

visited December 13, 2023); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 283 (2d Cir.

2021); *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1241 (D. Or. 2021)).

  The Plaintiffs argue that the Court should take judicial notice of facts in Dr. Marks'

Declaration.  Dkt. 36.  In his declaration, Dr. Marks states that there are some "legal" differences

between the Pfizer-BioNTech vaccine and COMIRNATY® while fully acknowledging that the

"medical formulation" is the same and that both products are "made by the same manufacturer

under current good manufacturing practice requirements."  Dkt. 36-2 at 5.  He points out that

COMIRNATY® is labeled in one manner and the Pfizer-BioNTech vaccine is labeled

differently.  Dkt. 36-2 at 5.  That the labels are different is a fact that "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned" and so is judicially noticed here.  However, a difference in labeling does not change the outcome of this case.

In any event, on August 30, 2021, PeaceHealth issued its "COVID-19 Vaccine Requirement Policy" (sometimes referred to herein as "Policy").  Dkt. 8-2.  Like Gov. Inslee's Proclamation, this Policy required that PeaceHealth employee healthcare workers be "fully vaccinated against COVID-19" subject to medical or religious exemptions.  *Id.*  October 15, 2021 was set as the compliance date for full vaccination or approval of an exemption under PeaceHealth's Policy.  *Id.*

After the deadlines set in both the Proclamation and Policy, on November 5, 2021, the U.S. Secretary of Health and Human Services "issued an interim final rule amending the existing conditions of participation in Medicare and Medicaid to add a new requirement—that facilities ensure that their covered staff are vaccinated against COVID–19."  *Biden v. Missouri*, 595 U.S. 87, 91 (2022)(*citing* 86 Fed. Reg. 61561, 61616–61627).  Under this rule, Medicare and Medicaid program participants like PeaceHealth must require medical staff be vaccinated against COVID-19 unless medical and/or religious exemptions are appropriate.  *Id.*  Further, "[a] facility's failure to comply may lead to monetary penalties, denial of payment for new admissions, and ultimately termination of participation in the programs."  *Id.*  On January 13, 2022, the United States Supreme Court upheld the rule.  *Id.*

## II.    DISCUSSION

### A.  MOTION TO DISMISS STANDARD

Fed. R. Civ. P. 12(b)(6) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 547.

## B. FEDERAL CLAIMS MADE PURSUANT TO SECTION 1983

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

### 1. Whether the PeaceHealth Defendants Acted Under the Color of Law - State Actor?

The PeaceHealth Defendants contend that the Plaintiffs' federal claims, asserted pursuant to § 1983 should be dismissed because they did not act "under the color of law," that is, as state

1   actors.  Before the Court can answer the question of whether the PeaceHealth Defendants acted

2   as a state actor, the Court "must identify the specific conduct" of which the Plaintiffs complain.

3   *Rawson v. Recovery Innovations, Inc*., 975 F.3d 742, 747 (9th Cir. 2020).

4        In the Amended Complaint and their response, the Plaintiffs engage in lengthy

5   discussions about PeaceHealth's obligations as an entity that gives COVID-19 vaccines.  Dkts. 8

6   and 36.  The Plaintiffs frequently conflate PeaceHealth's obligations as an entity that administers

7   vaccines with PeaceHealth's actions as an employer.  The Plaintiffs' arguments related to the

8   PeaceHealth Defendants' role as an entity that gives COVID-19 vaccines are not relevant to

9   whether it was a state actor for its § 1983 based claims.  The Amended Complaint does not

10  allege that PeaceHealth gave them a COVID-19 vaccine or forced the Plaintiffs to receive a

11  COVID-19 vaccine from PeaceHealth.  *Id.*  The Plaintiffs fail to allege that they were injured in

12  any manner by PeaceHealth in its role as an entity that administered COVID-19 vaccines.

13       The Plaintiffs contend that they were injured (fired) as a result of PeaceHealth's actions

14  in its role as an employer.  Dkt. 8.  More specifically, in their Amended Complaint, the Plaintiffs

15  seek to hold the PeaceHealth Defendants liable for their Policy that the Plaintiffs receive a

16  COVID-19 vaccination before October 15, 2021, subject to medical and religious exemptions, or

17  face being fired.  *Id*.  The relevant inquiry here, then, is whether the PeaceHealth Defendants'

18  role as an employer requiring their employees to receive a COVID-19 vaccine, subject to

19  exemptions, constituted state action.

20       Four general tests may be used in identifying state action: (1) public function; (2) joint

21  action; (3) governmental nexus; and (4) governmental compulsion or coercion.  *Rawson* at 747.

22

23

24

Compliance with generally applicable laws is not sufficient to convert private conduct into state action under any of the four tests. *Heineke v. Santa Clara Univ*., 965 F.3d 1009, 1013 (9th Cir. 2020).

The conduct of which Plaintiffs complain was merely PeaceHealth's compliance with a generally applicable law – Gov. Inslee's Proclamation.  Accordingly, it did not constitute state action. *Zimmerman v. PeaceHealth,* 2023 WL 7413650, at *13 (W.D. Wash. Nov. 9, 2023).  In *Zimmerman,* 50 current and former PeaceHealth employees filed a lawsuit in this district, in part arguing that PeaceHealth failed to properly grant them religious accommodations after having been granted an exemption from PeaceHealth's COVID-19 vaccine policy (the same policy that is at issue here).  *Id.*  The *Zimmerman* Plaintiffs also argued that PeaceHealth acted as a state actor and that PeaceHealth's COVID-19 vaccine policy constituted "arbitrary and capricious government action."  *Id.*  On November 9, 2023, the court dismissed the *Zimmerman* Plaintiffs' "arbitrary and capricious" claim, finding that PeaceHealth's enforcement of its COVID-19 vaccine policy did not constitute state action.  *Id.* at 12-23.  *Zimmerman's* finding is persuasive and applies here.

As stated in *Zimmerman,* the Plaintiffs have failed to demonstrate that PeaceHealth's enforcement of its Policy was a public function (state action test (1)) because they did not demonstrate that the function at issue was "both traditionally and exclusively governmental." *Rawson* at 755 (*cleaned up*)(public function test satisfied only where function is "both traditionally and exclusively governmental"). The Plaintiffs did not establish that PeaceHealth's enforcement of its COVID-19 vaccine policy constituted joint action (state action test (2)) or that it had a sufficient governmental nexus (state action test (3)).  *Zimmerman* at 13.  Lastly, they did not show that PeaceHealth's enforcement of its Policy was a result of governmental compulsion

or coercion (state action test (4)).  *Id.*  Governmental compulsion in the form of a generally applicable law, without more, is not sufficient to deem a private entity a governmental actor. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 841 (9th Cir. 1999).  "Instead, the plaintiff must establish some other nexus sufficient to make it fair to attribute liability to the private entity."  *Id.* This the Plaintiffs have not done.  The Plaintiffs have failed to demonstrate that the PeaceHealth Defendants were state actors.

2.  <u>Whether PeaceHealth Deprived Plaintiffs of a Federal Constitutional or Statutory Right?</u>

Even if the PeaceHealth Defendants were state actors, the Plaintiffs have failed to allege sufficient creditable facts to state a claim for relief for all claims asserted under § 1983.

*a.  Equal Protection Claim*

The Equal Protection Clause provides that, "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.  "The Equal Protection Clause ensures that 'all persons similarly situated should be treated alike.'" *Enquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 992 (9th Cir. 2007).

Plaintiffs raise a "class of one" equal protection claim, alleging that they were treated differently than other, similarly situated groups.  While they argue that they are members of a suspect class, the Plaintiffs fail to support that contention with any authority or rationale. Accordingly, to assert a "class of one" equal protection claim, the Plaintiffs must demonstrate that the PeaceHealth Defendants:  (1) intentionally (2) treated them differently than other similarly situated groups, (3) without a rational basis.  *Seaplane Adventures, LLC v. Cnty. of Marin*, 71 F.4th 724, 729 (9th Cir. 2023).  Because the Plaintiffs fail to allege sufficient facts regarding the third requirement, the Court need not reach the remaining two requirements.

In the December 21, 2023 order granting Gov. Inslee's motion to dismiss, this Court held that Gov. Inslee had a rational basis for issuance of the Proclamation.  Dkt. 32 at 9.  The PeaceHealth Defendants' Policy mirrored Gov. Inslee's Proclamation.  Accordingly, even if the PeaceHealth Defendants were state actors, they did not violate the Plaintiffs' equal protection rights because there was a rational basis for the Policy.  This claim should be dismissed.

### b.  Substantive and Procedural Due Process

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

**Substantive Due Process**.  The December 21, 2023 order held that COVID-19 vaccine mandates do not implicate a fundamental right protected by the substantive due process clause and so rational basis review applies to the Plaintiffs' substantive due process claims.  Dkt. 32 at 10.   As stated in Section II.B.2.a. above, the Plaintiffs have not alleged sufficient facts from which to conclude that PeaceHealth did not have a rational basis for its Policy.  Their substantive due process claim should be dismissed.

**Procedural Due Process**.  "A procedural due process claim has two elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021).  The Plaintiffs fail to point to facts, which if believed, would demonstrate that they were denied "adequate procedural protections" from the PeaceHealth Defendants.  They fail to point to procedural protections that they were due but did not receive.  This claim should be dismissed.

### c.  Spending Clause Doctrine Claim

The Spending Clause of the U.S. Constitution places some limits on the federal government's ability to condition use of federal funds. *S. Dakota v. Dole*, 483 U.S. 203, 206 (1987). The Plaintiffs fail to point to any authority that the spending clause doctrine places limits on PeaceHealth's enforcement of a COVID-19 vaccine mandate. This claim should be dismissed.

> ### d.   *"Subjected to Investigational Drug Use Claim"*

As it relates to this claim, the Plaintiffs refer to 21 U.S.C. § 360bbb-3, 45 C.F.R. Part 46, the Belmont Report, Article VI of the ICCPR Treaty, 10 U.S.C. § 980, Federal Wide Assurance, and the CDC COVID-19 Vaccination Program Provider Agreement. Dkt. 8.

As was the case against Gov. Inslee, the Plaintiffs fail to show that any of the federal statutes, regulations, reports or international treaties they cite in their Amended Complaint apply and/or that they contain a private cause of action that is available against the PeaceHealth Defendants here.

**21 U.S.C. § 360bbb-3**. As is relevant here, 21 U.S.C. § 360bbb-3(e)(1)(A)(ii), which governs emergency use authorization of medication, requires that the Secretary of the U.S. Dept. of Health and Human Services establish:

> Appropriate conditions designed to ensure that individuals to whom the product is administered are informed--
>
> (I) that the Secretary has authorized the emergency use of the product;
>
> (II) of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown; and
>
> (III) of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

This statute does not apply to PeaceHealth's enforcement of the Policy.  The statute directs the Secretary of the U.S. Dept. of Health and Human Services' actions and those of entities administering a vaccine vis-à-vis someone to whom they are administering the vaccine. It does not apply to a private employer's enforcement of a vaccine mandate.

Further, there is no private right of action under 21 U.S.C. § 360bbb-3 (e)(1)(A).  *Navy Seal 1 v. Biden*, 574 F. Supp. 3d 1124, 1130 (M.D. Fla. 2021)(holding that 21 U.S.C. § 360bbb-3 (e)(1)(A)'s "option to accept or refuse" an emergency vaccine confers no private right of action, creates no opportunity to sue the government, and permits enforcement by the United States and by the states in specific circumstances only); *Doe v. Franklin Square Union Free Sch. Dst*., 568 F.Supp.3d 270, 292 (E.D.N.Y. 2021); *Bird v. Martinez-Ellis*, 22-8012, 2022 WL 17973581, at *5 (10th Cir. Dec. 28, 2022).  As stated below in Section II.B.2.f., no private right of action should be implied for § 360bbb-3(e)(1)(A).  While Plaintiffs argue that § 1983 provides them a private right of action, § 1983 "merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).  Plaintiffs still must demonstrate that they have a private right of action under a statute.  *Id.*  The Plaintiffs have failed to do so here.

Moreover, the Plaintiffs could have received an FDA-authorized vaccine, so § 360bbb-3 (e)(1)(A) does not apply to PeaceHealth's enforcement of its vaccine policy.  To the extent the Plaintiffs assert a claim under the statute, it should be dismissed.

**45 C.F.R. Part 46, The Belmont Report, Article VI of the ICCPR**.  As was noted in the December 21, 2023 order, there is no private right of action under 45 C.F.R. Part 46, the Belmont Report, or the ICCPR.  Dkt. 32 at 12.  The Plaintiffs claims based on 45 C.F.R. Part 46,

The Belmont Report, Article VI of the ICCPR should be dismissed for lack of a cognizable legal theory.

**10 U.S.C. § 980**. Under 10 U.S.C. § 980(a)(1), "funds appropriated to the Department of Defense may not be used for research involving a human being as an experimental subject unless. . . the informed consent of the subject is obtained in advance . . ."

The Plaintiffs have failed to allege sufficient creditable facts from which they could obtain relief from PeaceHealth based on § 980(a)(1).  There is no allegation that PeaceHealth expended Department of Defense funds.  This claim should be dismissed.

**Federal Wide Assurance**.  According to the Amended Complaint, through Federal Wide Assurance, "an institution commits to the [U.S. Dept. of Health and Human Services] that it will comply with the requirements in the [U.S. Dept. of Health and Human Services'] Protection of Human Subjects regulations at 45 C.F.R. Part 46."  Dkt. 8 at 30, n. 23.

Federal wide assurance does not apply here – it applies to institutions "engaged in research . . ."  45 C.F.R. § 46.103(a).  There are no properly credited allegations that PeaceHealth was engaged in research in its enforcement of the Policy.  Further, the Plaintiffs fail to point to any authority that there is a private cause of action for Federal Wide Assurance.  The claim should be dismissed.

**The CDC COVID-19 Vaccination Program Provider Agreement**.  The Amended Complaint alleges that in signing the Provider Agreement, PeaceHealth agreed to comply with "the conditions specified in this agreement."  Dkt. 8 at 38.  The Amended Complaint contends that "'compliance with the conditions specified in this agreement' extends under 21 U.S.C. § 360bbb-3 to Plaintiffs' 'option to accept or refuse.'"  *Id.*

1       The Plaintiffs' claim pursuant to the Provider Agreement, brought under § 1983, should

2   be dismissed for failure to state a claim.  The Provider Agreement arguably creates obligations

3   for PeaceHealth to people to whom it administers COVID-19 vaccines.  According to the

4   allegations in the Amended Complaint, the Plaintiffs did not receive a COVID-19 vaccine from

5   PeaceHealth.  The Plaintiffs have not shown that they are entitled to relief under the Provider

6   Agreement because the Provider Agreement does not apply to them.  The Plaintiffs arguments

7   and contentions related to the Provider Agreement conflate PeaceHealth's obligations to people

8   to whom it administers COVID-19 vaccines, with PeaceHealth's actions as an employer.  It is

9   PeaceHealth's actions as an employer that are relevant here and there is no logical connection

10  between PeaceHealth's employment decisions and its agreement to be bound by requirements in

11  the Provider Agreement.

12      Moreover, even if it did somehow apply, the Plaintiffs cite no authority that they are

13  entitled to enforce a contract – the Provider Agreement - between the federal government and

14  PeaceHealth on a matter (failure to comply with § 360bbb-3) which is unrelated to their claimed

15  harm (being fired for failing to comply with the vaccine Policy).  Even assuming the Plaintiffs

16  could claim some benefit from the Provider Agreement, "[p]arties that benefit from a [federal]

17  government[al] contract are generally assumed to be incidental beneficiaries, and may not

18  enforce the contract absent a clear intent to the contrary." *Klamath Water Users Protective Ass'n*

19  *v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999)(opinion amended on denial of reh'g on

20  unrelated issue, 203 F.3d 1175 (9th Cir. 2000)).  The Plaintiffs fail to point to any clear intent in

21  either the Provider Agreement that they are any more than incidental beneficiaries.  Accordingly,

22  they are not entitled to enforce the Provider Agreement.  *Klamath Water* at 1211.

23

24

The Amended Complaint alleges that the Provider Agreement "clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. 1983." Dkt. 8 at 57. The Plaintiffs fail to explain this assertion or point to an authority that supports it. Section 1983 merely provides an enforcement mechanism of rights that exist pursuant to federal law. *Gonzaga* at 285. As stated above in Section II.B.2.d, there is no privately enforceable right available under 21 U.S.C. § 360bbb-3 and the Plaintiffs have not shown that they have a privately enforceable right pursuant to the Provider Agreement. This claim should be dismissed.

### e.   Unconstitutional Conditions Doctrine Claim

The unconstitutional conditions doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist*., 570 U.S. 595, 604 (2013). It prohibits the government from denying a person a benefit because they exercise a constitutional right. *Id.*

The Amended Complaint acknowledges that the Plaintiffs are "at will" employees of a private employer - PeaceHealth. Dkt. 8. Accordingly, they fail to plead sufficient facts to allege that a <u>government</u> benefit has been denied. The Plaintiffs unconstitutional conditions doctrine claim should be dismissed. *Antunes v. Rector & Visitors of Univ. of Va*., 627 F. Supp. 3d 553, 566 (W.D. Va. 2022)(University's COVID-19 vaccine mandate challenger failed to allege violation of unconstitutional conditions doctrine because no government benefit was at issue).

### f.   Implied Right of Action for the FDCA Provision Found at 21 U.S.C. § 360bbb-3

As stated above, there is no private right of action under 21 U.S.C. § 360bbb-3(e)(1)(A). *Navy Seal 1* at 1030; *Doe* at 292. The Plaintiffs assert that a private cause of action should be implied under this provision of the FDCA.

1  Although courts used to use a four factor test to determine whether a private cause of

2  action should be implied, the Supreme Court collapsed the prior test "into a single focus: the

3  central inquiry remains whether Congress intended to create, either expressly or by implication, a

4  private cause of action." *Saloojas, Inc. v. Aetna Health of California, Inc.*, 80 F.4th 1011, 1014

5  (9th Cir. 2023). The enforcement provisions of the FDCA are in 21 U.S.C. § 337. *PhotoMedex,*

6  *Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010). The plain language of § 337 expressly forbids

7  private parties from bringing enforcement suits for violations of the FDCA. *Id.*; *Bird v.*

8  *Martinez-Ellis*, 2022 WL 17973581, at *5 (10th Cir. Dec. 28, 2022)(*citing* 21 U.S.C. § 337(a)

9  "[e]xcept [certain enforcement actions that may be brought by a State in its own name], all ...

10  proceedings for the enforcement, or to restrain violations, of this Chapter shall be by and in the

11  name of the United States" in holding that there was no actionable claim for violation of §

12  360bbb-3 of the FDCA to challenge prison's COVID-19 vaccine practices). That Congress

13  chose to include an enforcement mechanism in the FDCA that is limited to actions by a State in

14  its own name or the United States "cuts strongly against" a finding of intent to create a private

15  cause of action. *Saloojas* at 1016. The Plaintiffs offer no rational argument to the contrary.

16  Their implied right of action 21 U.S.C. § 360bbb-3(e)(1)(A) claim should be dismissed.

17  **C. EXERCISE OF SUPPLEMENTAL JURISDICTION OVER STATE LAW**
   **CLAIMS, ORDER TO SHOW CAUSE, AND RENOTING PORTION OF**
18  **MOTION TO DISMISS**

19  Pursuant to 28 U.S.C. § 1367 (c), district courts may decline to exercise supplemental

20  jurisdiction over state law claims if: (1) the claims raise novel or complex issues of state law, (2)

21  the state claims substantially predominate over the claim which the district court has original

22  jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction,

23  (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

24

1    "While discretion to decline to exercise supplemental jurisdiction over state law claims is

2    triggered by the presence of one of the conditions in § 1367 (c), it is informed by the values of

3    economy, convenience, fairness, and comity." *Acri v. Varian Associates, Inc*., 114 F.3d 999,

4    1001 (9th Cir. 1997)(*internal citations omitted*).

5          Here, two of the four conditions in § 1367(c) are present.  All Plaintiffs' claims against

6    Gov. Inslee have been dismissed (Dkt. 32) and, by this order, all Plaintiffs' remaining federal

7    claims are dismissed.  Accordingly, this Court has "dismissed all claims over which it has

8    original jurisdiction," and so has discretion to decline to exercise supplemental jurisdiction over

9    the state law claims under § 1367(c)(3).  Moreover, the remaining state claims "raise novel or

10   complex issues of state law" under § 1367(c)(1).  These are issues for which the state court is

11   uniquely suited.  Because state courts have a strong interest in enforcing their own laws, *See*

12   *Carnegie-Mellon University v. Cohill,*484 U.S. 343, 352 (1988), the value of comity is served by

13   this Court declining jurisdiction.  Further, the values of economy, convenience, and fairness may

14   well be served by this Court's declining to exercise supplemental jurisdiction.  *See Acri* at

15   1001.

16         Accordingly, by February 2, 2024, the parties should be ordered to show cause, in

17   writing, if any they have, why the Court should not decline to exercise supplemental jurisdiction

18   and should not dismiss the remaining state law claims without prejudice.  To the extent the

19   PeaceHealth's motion to dismiss relates to state law claims, that motion (Dkt. 30) should be

20   renoted for February 2, 2024.  If the Court retains supplemental jurisdiction over the state law

21   claims, PeaceHealth's motion to dismiss the state law claims (Dkt. 30) will be addressed.

22                   **III.**   **<u>ORDER</u>**

23         Therefore, it is hereby **ORDERED** that:

24

- The Plaintiffs' motion for judicial notice (Dkt. 36) **IS GRANTED**; and

- The PeaceHealth Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. 30) **IS**:

  - **GRANTED** as to the Plaintiffs' federal claims; the Plaintiffs' federal claims asserted against the PeaceHealth Defendants **ARE DISMISSED WITH PREJUDICE** and

  - **RENOTED** to **February 2, 2024** as to Plaintiffs' state law claims.

- By **February 2, 2024**, the parties **ARE ORDERED TO SHOW CAUSE**, in writing, if any they have, why the Court should not decline to exercise supplemental jurisdiction and should not dismiss the remaining state law claims without prejudice.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 23rd day of January, 2024.

ROBERT J. BRYAN
United States District Judge